UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHEASTERN DIVISION

| | |
|---|---|
| BRIAN R. BIBB | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-CV-70-ACL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Brian R. Bibb brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. An Administrative Law Judge ("ALJ") found that, despite Bibb's impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, under 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. For the following reasons, the decision of the Commissioner will be reversed and remanded for further proceedings.

## I. Procedural History

Bibb filed his application for DIB on December 17, 2019. (Tr. 11). He claimed he is unable to work due to bipolar disorder, depression, borderline personality disorder, shoulder pain, partial hearing, a bleeding ulcer, and insomnia. (Tr. 240.) He was 32 years old at his alleged onset of disability date. (Tr. 224.) The ALJ denied plaintiff's claim and the Appeals Council denied his claim for review. (Tr. 1–4, 11–22.) Thus, the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Bibb first argues that that the ALJ did not properly analyze the opinion of Nurse Practitioner Geoff Westhoff, APN under 20 C.F.R. § 404.1520c. (Doc. 16 at 7.) Next, Bibb argues more broadly that the RFC is not supported by substantial evidence. *Id.*

## II. The ALJ's Determination

The ALJ first found that Bibb met the insured status requirements of the Social Security Act through March 31, 2021. (Tr. 14.)  Next, the ALJ found that Bibb has not engaged in substantial gainful activity since December 11, 2019, the alleged onset date. *Id.* The ALJ concluded that Bibb has the following severe impairments: polyarthralgia, major depressive disorder, attention deficit-hyperactivity disorder (ADHD), social phobia/social anxiety disorder with panic attacks, post-traumatic stress disorder (PTSD), borderline personality disorder, and alcohol use disorder. *Id.*

The ALJ did not find that these impairments individually or any combination of these impairments met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

As to Bibb's RFC, the ALJ stated:

> [Bibb] has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently. He is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. He is unable to climb ladders/ropes/scaffolds. He is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. The claimant is able to tolerate no direct interact [sic] with the public and only occasional interaction with coworkers, with no tandem tasks.

(Tr. 16.) The ALJ found that Bibb was unable to perform past relevant work as a collection clerk, but Bibb could perform other jobs existing in significant numbers in the national economy. (Tr. 20.) Accordingly, the ALJ determined that Bibb was not disabled, as defined by the Social Security Act, from December 11, 2019 through the date of the decision.

### III. Applicable Law

III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," requires a more scrutinizing analysis than "than a

mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Sec'y of Health & Hum. Servs.,* 957 F.2d 581, 585–86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel.*

*Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted—or can be expected to last—for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists. . . in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that

significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Id.* § (b)(1)–(6) (enumerating the abilities and aptitudes of basic work activities); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), 416.920(d); *see also Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§

416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Wright v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence that the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000). The Commissioner must prove both that the claimant's RFC will allow the claimant to make an adjustment to other work and that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the

Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

20 C.F.R. sections 404.1520a and 416.920a explain the evaluation process for mental impairments. The first step requires that the Commissioner "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the

impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

### IV.  Discussion

As noted, Bibb challenges the ALJ's evaluation of the medical opinion evidence and the ALJ's RFC determination.[1] Bibb first argues that the ALJ did not properly follow the dictates of 20 C.F.R. § 404.1520c in evaluating the medical opinion of Mr. Westhoff.

Mr. Westhoff provided a Medical Source Statement indicating that Bibb has several marked and extreme limitations in following instructions and in interacting with other people. (Tr. 465–69.) For example, Mr. Westhoff describes Bibb's short-term memory as "very poor," and notes Bibb's "inability to maintain stable relationships with others" due to a Borderline Personality Disorder diagnosis.  (Tr. 467.) He also notes Bibb's history of on-the-job panic attacks, anxiety, anger, and mood instability. *Id.* Finally, Mr. Westhoff stated that Bibb's symptoms would cause him to miss more than four days of work per month; to be off-task 25 percent or more during the workday; and to take four to six 10–15-minute unscheduled breaks daily due to panic attacks, anxiety, anger, and paranoia. (Tr. 468). Mr. Westhoff's opinion imposes limitations on Bibb that would result in a finding of disability. *See* (Doc. 16 at 8–9); (Tr. 57–60) (testimony of the vocational expert).

Bibb alleges that the ALJ failed to discuss some of the 20 C.F.R. § 404.1520c factors. Bibb argues that Mr. Westhoff's opinion was consistent with and supported by

---

[1] Bibb's arguments focus on the ALJ's assessment of his mental impairments, therefore, the Court will limit its discussion to the evidence related to Bibb's mental impairments.

medical evidence, and that the ALJ should have given the opinion more weight. He also criticizes the ALJ for not considering Mr. Westhoff's specialization or treating relationship with Bibb under subsection 404.1520c(c)(3)–(4).

A "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and it includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Under the revised Social Security regulations,[2] the agency will not give any specific evidentiary weight to any prior medical findings, including those from the claimant's treating physicians. 20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2). Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines. 20 C.F.R. § 404.1520c.

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors ... in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). An ALJ's failure to address either the

---

[2] The new regulations apply to Bibb's claims because he filed his appeal after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c.

consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding when ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-evaluation Regulation was legal error)). ALJs need not explain in their decision how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

> The ALJ evaluated Mr. Westhoff's opinion as follows:
>
> The undersigned is not persuaded by Mr. West[h]off's opinion. Geoff West[h]off is a nurse practitioner who provided care for the claimant during the relevant period. Mr. West[h]off reported marked-to-extreme social and stress-management limitations. He also opined that the claimant experiences marked-to-extreme limits in his ability to understand or carry out instructions, including simple instructions. Mr. West[h]off further reported very poor short-term memory, impaired judgment and decision-making skills, poor concentration and difficulty staying on task. (Ex. B13F). During the period Mr. West[h]off provided care for the claimant, his examinations were generally normal, though providers frequently noted some abnormal behaviors and impairment in judgment and insight. This substantial inconsistency between Mr. West[h]off's opinion and direct examinations and the claimant's reports to treatment providers makes this opinion of little value in assessing the claimant's mental function. Further, though the claimant had a period of less stability, when he was not compliant with medication, and was consuming alcohol, but this was a brief period and even during that period, examinations did not support the extreme or marked limits Mr. West[h]off described.

(Tr. 19.) Bibb argues that the ALJ's reasoning does not satisfy the requirements of the regulations and provides little understanding of why the ALJ found Mr. Westhoff's opinion of little value. The undersigned agrees.

An ALJ's mere reference to the words "support" and "consistent" in her treatment of a medical opinion is "insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how she considered these factors in determining the persuasiveness of a medical opinion." *Martini v. Kijakazi*, No. 4:20-CV-1711-CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022). The ALJ's explanation need not be exhaustive, but boilerplate or "blanket statements" do not satisfy the requirement.  *Lucus*, 960 F.3d at 1069 (quoting *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)). "No matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless [must] abide by the Regulation's mandate to 'explain' the supportability [and consistency] of [a medical] opinion in view of such evidence." *Martini*, 2022 WL 705528 at *5; *see also Pipkins v. Kijakazi*, No. 1:20-CV-161-CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination). The Regulation requires "more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions." *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).

The ALJ's evaluation of Mr. Westhoff's opinion fails to adequately address the factors of supportability and consistency. First, the ALJ summarizes Mr. Westhoff's opinions and findings, which would result in a finding of disability. Then, she dismisses the opinion as unpersuasive  because "[Bibb's] examinations were generally normal." The

ALJ does not discuss what "generally normal" means in this context, which findings she considered to be generally normal, or how generally normal findings in one area undermines the rest of Mr. Westhoff's opinion. After mentioning the "generally normal" findings, the ALJ noted that "providers frequently noted some abnormal behaviors and impairment in judgment and insight." (Tr. 18.)  In fact, Bibb's treatment history reveals numerous instances of when Bibb displayed abnormal behavior, activity level, affect, insight, and judgment. (Tr. 338–39, 342, 343–344, 349, 352, 353, 354, 358–59, 364, 369, 373–74, 434, 448, 453, 457, 461, 468). The ALJ recognized these findings and behaviors elsewhere, *e.g.,* (Tr. 18) (citing Tr. 338–418), but she does not incorporate that discussion into her evaluation of Mr. Westhoff's opinion. These findings of abnormal behaviors tend to show that Mr. Westhoff's opinion is supported by and consistent with other medical evidence. Given these other records, the ALJ's characterization of "generally normal" findings is vague and unclear, which does not meet the Regulation's requirement to specifically explain how opinions are supported by other medical evidence.

The ALJ later concludes that there is "substantial inconsistency" between Mr. Westhoff's opinion and other direct examinations, but her use of the term "substantial inconsistency" suffers from the same defect as the use of "generally normal." She does not explain what "substantial inconsistency" means in context, and so it is vague and unclear. There is no citation to anything in the record to help explain the perceived inconsistency. *See Laramie v. Kijakazi*, 4:22-CV-107-ACL, 2023 WL 2610215, at *6 (E.D. Mo. Mar. 23, 2027) (finding that ALJ's statement that the medical opinion was somewhat supported by the record "as more fully discussed above," did not meet the requirements of the regulations

when the ALJ "did not provide a more detailed explanation anywhere [else] in her opinion.").

There is little discussion elsewhere in the opinion that could help shed light on why the ALJ found Mr. Westhoff's opinion unpersuasive. For instance, the ALJ makes sparse references to Mr. Westhoff's opinion in the Step 3 discussion, (Tr. 14–16), despite the fact that Bibb would satisfy the "paragraph B" criteria if his mental impairments—individually or in combination—"result in one extreme limitation or two marked limitations in a broad area of functioning." (Tr. 15). Mr. Westhoff noted "marked" limitations in Bibb's ability to understand, remember, and carry out simple instructions, and he noted "extreme" limitations on Bibb's ability to understand, remember, and carry out complex instructions. (Tr. 466–67). Meanwhile, he noted marked limitations on interacting appropriately with supervisors, and extreme limitations on interacting with the public and handling changes in the workplace. These limitations could lead to a finding of disability, but the ALJ does not discuss Mr. Westhoff's findings in these areas. (Tr. 15.) Instead, the ALJ only discusses the findings of the state agency consultants Dr. James Morgan and Dr. Robert Cottone. *Id.*

In looking at Bibb's ability to concentrate, persist, or maintain pace, the ALJ did note Mr. Westhoff's finding that Bibb "experiences difficulty with focus and concentration," (Tr. 15) but then dismissed this finding because she thought that Bibb's treatment record was too limited to support more than a mild limitation. *Id.* As to Bibb's ability to adapt and manage himself, the ALJ noted Mr. Westhoff's description that Bibb is "easily flustered" and that "high-stress situations exacerbate [Bibb's] symptoms of depression and anxiety," but "[d]espite the severity of these allegations," the fact that Bibb

could attend his own doctor's appointments independently showed no more than a moderate limitation. Though this discussion at Step 3 did not specifically require an evaluation of Mr. Westhoff's medical opinions, it fails to elucidate any other reasons as to why the ALJ found Mr. Westhoff's opinion wholly unpersuasive. There is little in the opinion to show that the ALJ met the requirement of the Regulations to discuss the factors in 20 C.F.R. § 404.1520c. Overall, the ALJ's evaluation did not make her reasoning sufficiently specific enough to make it clear to any subsequent reviewers. *Lucus*, 960 F.3d at 1069.

Finally, the ambiguity left from the ALJ's discussion of Mr. Westhoff's opinion is exacerbated by the fact that the opinions of the state agency consultants also supported additional RFC restrictions beyond those the ALJ suggested. To be sure, the ALJ performed a more thorough evaluation of Drs. Morgan and Cottone, *see* (Tr. 15, 19 ), and Bibb does not challenge the ALJ's assessment of their opinions. The fact that the state consultants' opinions supported extra restrictions, however, furthered the need for the ALJ to address Mr. Westhoff's opinions.

A reviewing court cannot fill the gaps in an ALJ's opinion, nor offer its own reasoning and analysis to satisfy the Regulation's requirement.  *See Laramie*, 2023 WL 2610215, at *7; *see also Hirner*, 2022 WL 3153720, at *9 ("Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions."). Nor was this error harmless. If the ALJ gave Mr. Westhoff's opinion greater weight, then the RFC may have had additional

restrictions. *See Lucus*, 960 F.3d at 1069. Accordingly, the undersigned finds that the ALJ erred in analyzing the persuasiveness of the medical opinion evidence. This error affected the ALJ's RFC determination, which renders it without the support of substantial evidence. Because remand is required for revaluation of the opinion evidence and RFC, the Court will not rule on Bibb's remaining arguments. *See, e.g.*, *Laramie*, 2023 WL 2610215, at *8.

## Conclusion

For the reasons discussed above, the Commissioner's decision is not based on substantial evidence on the record as a whole, and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. On remand, the ALJ must properly evaluate the persuasiveness of the medical opinion evidence and formulate a RFC supported by the substantial evidence.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2023.